UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
THOMAS WARD,

                    Plaintiff,

      -against-               **MEMORANDUM AND ORDER**
                           1:16-cv-05149(FB)
CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

                    Defendant.
-----------------------------------------------x

*Appearances:*
*For the Plaintiff*                 *For the Defendant*
CHRISTOPHER JAMES BOWES      CANDACE SCOTT APPLETON
Center for Disability Advocacy Rights    United States Attorneys Office
100 Lafayette Street, Ste. 304        Eastern District of New York
New York, NY 10013              271 Cadman Plaza East
                               Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Thomas Ward ("Ward") seeks review of the final decision of the Commissioner

of Social Security ("Commissioner") denying his application for disability benefits

under Title II of the Social Security Act. Both parties move for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following

reasons, Ward's motion is granted to the extent that the case is remanded for further

proceedings. The Commissioner's motion is denied.

**I**

Ward worked for the New York City Department of Sanitation until he suffered a stroke in January 2011. His stroke left him with nerve damage in the left side of his body. He has also complained of pain in his lower back and right hip and memory problems. Ward has struggled with alcoholism. While he has maintained sobriety at times, he has also frequently relapsed. He has had up to 35 seizures, which appear to correlate with these relapses. For example, Ward was hospitalized for drinking-related seizures in March 2011, April 2011, June 2011, February 2012, May 2013, and September 2013. After the September 2013 seizures, Ward alleges that he quit drinking entirely. He has not reported any seizures since.

Ward's treating physician, Dr. Neil Nepola, saw him frequently between 2011 and 2014. He issued letters dated April 1, 2013 and October 13, 2014 finding that Ward was totally disabled, and that his disability onset date was April 20, 2012. Ward also met with the Commissioner's consultative examiner Dr. Chitoor Govindaraj on July 15, 2013, who opined that Ward had no physical restrictions and was cleared for occupation.[1]

---

[1] Ward also met with Dr. German Malaret, who opined that he was not disabled at all. However, the ALJ excluded his diagnosis because he did not have access to all of Ward's medical evidence.

**II**

Ward filed for disability benefits on April 3, 2013. The application was denied, and he had a hearing before an administrative law judge ("ALJ") on October 29, 2014. On February 4, 2015, applying the familiar five-step evaluation process,[2] the ALJ issued a written opinion determining that Ward had two severe impairments: alcoholism in early remission and degenerative disc disease. However, the ALJ found that Ward retained the residual functional capacity ("RFC") to do sedentary work. On July 12, 2016, the Appeals Council denied Ward's request for review. This action followed.

---

[2] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner need only show "that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

Ward argues that the ALJ erred (1) in finding that neither his seizures nor memory loss constitutes a severe disability, (2) in finding that he retained the RFC for sedentary work, and (3) in relying on the Vocational Expert ("VE"), who Ward claims incorrectly testified that Ward retained the RFC to do jobs available in the national economy.

**A.    Seizures**

The ALJ found that Ward's seizures did not constitute a severe disability for two reasons: First, there was no record of "significant treatment" for these seizures, AR at 60,[3] and second, the seizures were "alcohol related," AR at 63.

Ward is correct that the first reason is not valid. The record was replete with examples of Ward receiving treatment for these seizures, including multiple extended hospitalizations. Therefore, to any extent the ALJ based his decision on the lack of

---

[3] "AR" refers to the Administrative Record.

4

evidence of treatment in the record, he erred because substantial evidence does not support this conclusion.

However, the second reason is valid. "[A]n individual shall not be considered . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). "The critical question is 'whether [ the SSA] would still find [the claimant] disabled if [he] stopped using drugs or alcohol.'" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (quoting 20 C.F.R. § 416.935(b)(1)). The applicant bears the burden of proof that alcohol or drug addiction does not contribute to the disability. *Id.*

Here, there is substantial evidence supporting the ALJ's conclusion that Ward's seizures are "alcohol related." AR at 63. His hospitalizations for seizures typically occurred simultaneously with his relapses into heavy drinking. And once he quit drinking in late 2013, the seizures stopped. Therefore, the ALJ did not err in finding that Ward's alcohol abuse was a contributing factor to his seizures and that Ward was thus barred from collecting disability payments on that basis.

Because the ALJ had a sufficient legal reason to hold Ward's seizures did not constitute a severe disability under the applicable regulations, his error in finding there was no evidence of significant treatment for those seizures was harmless.

**B.  Memory Loss**

Ward also argues that the ALJ erred in finding that he did not suffer from memory loss. Ward is correct. The question of memory loss came up prominently in an exchange during the hearing in which Ward agreed that his disabilities would allow him to work as a greeter except for his memory loss:

Q:  Suppose there was a job at the Home Depot, Lowe's, to be the greeter. You could sit on a chair, you could stand at the front, and when people walked in they'd say what aisle is the paint in, and you'd tell them. Could you do that job?

A:  If my memory allows me to, yes. I'm not good at remembering things. You know, I can't answer that, to be honest.

AR at 36.

The ALJ then held in his written opinion that Ward had the RFC to do sedentary work based largely on the above exchange: "The claimant responded that he could do [the greeter] job, except for his memory issues that would interfere. However, the record contains no diagnosis of any impairment that would interfere with his thought process and the claimant is not receiving psychiatric treatment." AR at 62. Yet just one paragraph later, the ALJ identifies that Ward was diagnosed with memory problems: "Dr. Nepola noted that the claimant experienced symptoms including . . . memory loss[.]" *Id.*

Therefore, the ALJ's factual findings as to Ward's symptoms of memory loss are inconsistent, and the ALJ erred in holding that Ward retained an RFC for

sedentary work based on his incorrect finding that "the record contains no diagnosis" of memory impairment. *Id.* And because Ward identified these memory problems as the key impairment that may keep him from retaining an RFC for sedentary work, the error was material.

The record is not sufficiently developed to determine the extent of Ward's memory problems and whether they actually would impact his RFC for sedentary work. "When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, *sua sponte*, to develop the record further by contacting the treating physician to determine whether the required information is available." *Cleveland v. Apfel*, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[e]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information [from the treating physician] *sua sponte*.").

Therefore, the case is remanded to the ALJ to better develop the record regarding Ward's memory problems and whether these problems constitute a severe impairment such that he does not retain the RFC to perform sedentary work. In making this determination, the ALJ should also consider to what extent, if any, his alcoholism is a "contributing factor" to these problems.

Finally, while the ALJ discounted the credibility of Ward's treating physician, Dr. Nepola, because his treatment notes did not support his diagnosis that Ward was

totally disabled, the ALJ based this determination largely on the fact that the notes "do not reflect debilitating restrictions in the claimant's back." AR at 62. But Dr. Nepola based his assessment on the totality of Ward's symptoms, including his seizures and memory loss. While the ALJ rightfully excluded the seizures from consideration when assessing Ward's disability under the relevant regulations, it does not necessarily follow that Dr. Nepola lacked credibility because he included these seizures in his diagnosis, as he was providing a medical assessment, not a legal one. Therefore, the ALJ should reassess Dr. Nepola's credibility. This reassessment should inform the ALJ in weighing the credibility of Dr. Nepola's diagnosis of Ward's memory issues once the record is fully developed.

The ALJ's finding that Ward retained the RFC to do sedentary work absent his memory problems was otherwise based on substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). In particular, the following evidence supports the conclusion: (1) Ward's frank admission at the hearing that he could do a sedentary job absent his memory issues, (2) the evidence that Dr. Nepola recommended up to 50 minutes of exercise a day and once found Ward to be in "good health" during the relevant time period, (3) the general inconsistency between Dr. Nepola's treatment notes and his conclusion that Ward had severe physical limitations (at least once the seizures were disregarded); and (4) the diagnosis of Dr. Govindaraj

that Ward had no physical restrictions and was "cleared for occupation." AR at 63.

Therefore, the Court does not disturb the ALJ's decision as to Ward's physical RFC. However, that Ward retains the physical RFC to do sedentary work has no bearing on his mental RFC, and the ALJ must still develop the record on the question of Ward's memory problems before making a final RFC determination.

Because the new evidence regarding memory loss will likely require a new VE determination, the Court does not need to reach Ward's additional arguments alleging deficiencies in the previous VE's testimony.

**IV**

For the reasons above, Ward's motion is granted to the extent that the case is remanded for further development of the record. The Commissioner's motion is denied.

**SO ORDERED**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 7, 2018